SIGNED NOVEMBER 4, 2020
THIS MEMORANDUM OPINION HAS BEEN ENTERED ON THE DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.

No. 2:20-ap-00010    Doc 54    Filed 11/04/20    Entered 11/04/20 14:48:09    Page 1 of 13

Paul M. Black
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| PANTHERA ENTERPRISES, LLC | ) | |
| | ) | Case No. 2:19-bk-00787 |
| Debtor. | ) | |

| | | |
|---|---|---|
| BILL V. NEFF, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adv. Proc. No. 2:20-ap-00010 |
| PANTHERA ENTERPRISES, LLC and | ) | |
| PANTHERA TRAINING, LLC, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WEST VIRGINIA ECONOMIC | ) | |
| DEVELOPMENT AUTHORITY, | ) | |
| | ) | |
| Intervenor-Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on cross-motions for summary judgment filed by Bill V. Neff, Sr. (the "Plaintiff"); Panthera Training, LLC ("Panthera Training"); and Intervenor-

Defendant, West Virginia Economic Development Authority ("WVEDA").  The Plaintiff filed an adversary proceeding against Panthera Enterprises, LLC, the Debtor, and Panthera Training (collectively "the Defendants") seeking to establish ownership of certain personal property, and also seeking an order in detinue and damages for unjust enrichment (the "Complaint").  The WVEDA intervened as an alleged secured creditor of the Debtor, claiming an interest in the property at issue.  The Defendants and Intervenor-Defendant contend that the Plaintiff is not the owner of the property and that the Complaint should be dismissed.  The parties filed cross-motions for summary judgment, and once the matter was fully briefed, the Court heard argument on October 22, 2020.  At the conclusion of the hearing, the Court took the matter under advisement.[1]  For the reasons set forth below, the Court will grant WVEDA's and Panthera Training's motions for summary judgment, deny the Plaintiff's motion for partial summary judgment, and dismiss the Complaint.

## FACTUAL BACKGROUND

This case concerns the disputed ownership of certain modular office units.  The Plaintiff is an individual residing in the Commonwealth of Virginia.  ECF 1, p.1.  The Debtor owns real estate in Hardy County, West Virginia upon which Panthera Training operates a military and law enforcement personnel training facility.  ECF 34, pp.1-2.

The pertinent facts are largely undisputed.  In the summer of 2007, the Plaintiff purchased 74 modular office units.  ECF 38, p.2.  The units are 12' by 60', transportable by wheeled undercarriages, and designed to be assembled in various configurations to create temporary office facilities.  ECF 1, p.3.  In August 2009, pursuant to a lease agreement dated

---

[1] United States Bankruptcy Judge Paul M. Black, Western District of Virginia, sitting by designation.

July 29, 2009, the Plaintiff transported 38 of the modular units to the property in Hardy County, West Virginia (the "Property"). ECF 38, pp. 2-3. Once on the Property, the modular units were placed on temporary piers constructed of stacked concrete blocks, bolted together, and strapped to the ground. ECF 39, p.4. No party has asserted that the wheeled undercarriages have been removed.

TenX Group, LLC, the corporate predecessor to the Debtor, acquired title to the Property by deed dated August 21, 2013.[2] ECF 1, p.3. WVEDA financed the purchase of the Property with a 2013 loan in the original principal amount of $5,000,000.00 and a 2014 loan in the original principal amount of $1,871,505.00. ECF 34, p.5. WVEDA contends its loans are secured by liens against the Property and "all fixtures, fixed assets and personalty of a permanent nature…affixed or attached to the Property," as well as "the buildings, improvements or structures thereon and used or intended to be used in the possession, occupation or enjoyment thereof."[3] *Id.*

By June 2013, the Plaintiff alleges that Panthera Training Center (a separate entity from Panthera Training) was operating the training facility located on the Property. ECF 39, p.5. On June 14, 2013, the Plaintiff leased the 38 modular units to Panthera Training Center for a two-year term at a fixed annual rate of $120,000.00 payable in monthly installments of $10,000.00 (the "2013 Lease"). Neff's Ex. 5, pp. 1,6.

After the 2013 Lease expired, the Plaintiff and the Debtor executed a Contract of Sale dated July 23, 2015 (the "Contract"). Neff's Ex. 6, p.1. The Contract provides the Plaintiff agreed to sell the 38 modular units located on the Property for a purchase price of $810,000.00.

---

[2] Effective December 19, 2016, TenX Group, LLC changed its name to Panthera Enterprises, LLC. ECF 1, p.4.
[3] Whether the WVEDA has an enforceable lien on the modular units is beyond the scope of this Opinion.

3

*Id.* at ¶ 2.  The purchase price was to be paid in monthly installments of $10,000.00 for the first 24 months and then payments of $9,179.81 beginning August 1, 2017 and continuing through July 1, 2023, until the balance was paid in full.  *Id.* at ¶ 3.  The Contract is to be construed and governed by the laws of the Commonwealth of Virginia.  *Id.* at ¶ 19.  The Plaintiff did not file a financing statement.[4]

Payment under the Contract was not completed.  Through August 14, 2018, only 13 payments totaling $127,126.33 were made.  ECF 1, p.4.  On June 1, 2018, Panthera Training took possession of the Property, training facility, and mobile units pursuant to a Commercial Lease Agreement with the Debtor.  Neff's Ex. 7.  On September 13, 2019, the Debtor filed a Chapter 11 petition in the Northern District of West Virginia.  Bankr. ECF 1.  In its Schedule A/B, the Debtor listed the 38 modular units as its personal property.  Bankr. ECF 23.  On July 21, 2020, the case was converted to Chapter 7.  Bankr. ECF 202.  Aaron C. Amore was appointed Chapter 7 Trustee.[5]

Prior to conversion, on February 12, 2020, the Plaintiff filed the Complaint initiating this adversary proceeding.  ECF 1.  The Complaint contains three counts: (1) declaratory relief, asking the Court to declare that the Plaintiff is the owner of the 38 modular units; (2) detinue, asking the Court to rule that the Plaintiff has the right to immediate possession of said units from Panthera Training; and (3) unjust enrichment, asking the Court to rule that the Plaintiff be awarded damages in an amount equal to the value of the benefit received by Panthera Training

---

[4] A search of the West Virginia Secretary of State's UCC Database conducted by WVEDA on July 30, 2020 returned no active filings by the Plaintiff against Panthera Enterprises, LLC. WVEDA Ex. D.

[5] The Chapter 7 Trustee is not a named party to this proceeding, but has filed a response on behalf of "Panthera Enterprises, LLC, Aaron C. Amore, Trustee."  ECF 43.  On July 24, 2020, Amore filed a "Notice of Appearance and Substitute of Trustee for Debtor-in-Possession."  ECF 32.  Looking at substance over form, the proper parties appear to be before the Court.

4

for the use of the Plaintiff's property from June 1, 2018 to the present. *Id.* at 4-7. The central issue the Court must address is straightforward – who owns the modular units, the Plaintiff or the Debtor? It is a question resolved by reference to applicable law under the Uniform Commercial Code as applied to the facts of this case.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a) and 157(a). The Court concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper pursuant to 28 U.S.C. § 1409.

## CONCLUSIONS OF LAW

I. Applicable Law on Summary Judgment

Federal Rule of Civil Procedure 56, applicable in adversary proceedings through Federal Rule of Bankruptcy Procedure 7056, states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citing *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). "When considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Rossignol*, 316 F.3d at 523 (citing *Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir. 1996)). *See In re Terry Properties, LLC*, No. 16-

5

71449, 2017 WL 507277, at *3 (Bankr. W.D. Va. Feb. 3, 2017), *aff'd*, No. 1:17CV00004, 2017 WL 3736772 (W.D. Va. Aug. 30, 2017).

II.   Overview

Pursuant to the Contract, the Court looks to Virginia law, and specifically statutes governing sales and title, to resolve the issue of ownership of the modular units.   In Virginia, Article 2 of the Uniform Commercial Code (the "UCC") governs contracts for the sale of goods and determines when title passes from a seller to a buyer.   Goods are defined as "all things…which are movable at the time of identification to the contract for sale."   Va. Code § 8.2-105(1).   Virginia law considers the title transfer complete either at the time of contracting, the time the seller delivers the goods, or the time a "document of title" is delivered to the buyer, depending on the contract's terms, rather than upon full payment of the purchase price.   *See* Va. Code § 8.2-401.

Here, the Contract provides for the sale of "Thirty-Eight (38) Modular offices" identified by serial number in exchange for $810,000.00 to be paid in monthly installments over eight years.   The modular units, described in the Complaint as "transportable...via wheeled undercarriages," were movable at the time of sale.   ECF 1, p.3.   At the heart of this litigation is paragraph 3c of the Contract.   Paragraph 3c provides:

> Partial Release. Twenty Three Thousand Seven Hundred Nine Dollars and 11/100 ($23,709.11) will earn the release of a single Modular Office. Modular Offices will be released in blocks as currently configured according to Exhibit B. The release of all Modular Offices within any specific block must be earned prior to assignment of title from SELLER. PURCHASER may identify any block for release as earned. Please see attached Exhibit A and B showing the current configuration.

Neff's Ex. 6.

Based on the above-quoted language, the Plaintiff contends he retained ownership of the

6

modular units. The record shows that the Debtor did not perform pursuant to paragraph 3c as the Debtor only made 13 payments (totaling $127,126.33) and never identified a block of modular units for release. ECF 1, pp. 4-5. Notwithstanding the Debtor's nonperformance, the Defendants contend that paragraph 3c reserves, at most, a security interest in the modular units, which the Plaintiff did not perfect. ECF 47, p.8. Thus, the Defendants contend the Plaintiff is merely an unsecured creditor of the Debtor.

The Plaintiff contends that ownership never passed to the Debtor because the modular units were not identified in the Contract and documents of title were not delivered. In response, the Defendants contend that the Contract identifies the modular units and does not contemplate documents of title. If the Defendants are correct, ownership passed at the time of contracting, and the Complaint should be dismissed.

   III. <u>Count I – Declaratory Relief and the Application of Va. Code § 8.2-401</u>

The question before the Court is whether the modular units were property of the Debtor at the time of filing its petition before this Court, and thus property of the bankruptcy estate. Va. Code § 8.2-401, provides, in pertinent part, as follows:

> Each provision of this title with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. Insofar as situations are not covered by the other provisions of this title and matters concerning title become material the following rules apply:
>
> (1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (§ 8.2-501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this act. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the title on secured transactions (Title 8.9A), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

> (2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading: (a) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but (b) if the contract requires delivery at destination, title passes on tender there.
>
> (3) Unless other[wise] explicitly agreed where delivery is to be made without moving the goods, (a) if the seller is to deliver a tangible document of title, title passes at the time when and the place where he delivers such documents and if the seller is to deliver an electronic document of title, title passes when the seller delivers the document; or (b) if the goods are at the time of contracting already identified and no documents of title are to be delivered, title passes at the time and place of contracting.

Va. Code § 8.2-401(1)-(3). When construing the statute, courts have held that UCC Section 2–401(1) should be read first, because, if applicable, section (1) trumps sections (2) and (3). *In re J. Adrian Sons, Inc.,* 205 B.R. 24, 26 (Bankr. W.D. N.Y. 1997). Notably, both UCC Sections 2-401(2) and (3) begin with the clause: "unless otherwise explicitly agreed," demonstrating the drafters' intent that § 2–401(2) and (3) are "default" rules—i.e., rules that apply in the absence of contrary agreement. Put another way, courts have held that UCC Section 2–401(1) serves as the "baseline" principle, while subsections (2) and (3) provide objective tests in the absence of a Section 2–401(1) agreement. *See In re J. Adrian Sons,* 205 B.R. at 26; *New England Yacht Sales, Inc. v. Comm'r of Revenue Servs.*, 198 Conn. 624, 632, 504 A.2d 506, 510 (1986).

As an initial matter, the Court finds that the Contract fits within the scope of Section 8.2-401(1). The Plaintiff contends that Section 8.2-401(1) is inapplicable because no identification occurred prior to the Contract. Yet, the Contract specifically identifies the location of the modular units on the Property in Hardy County, West Virginia. Neff's Ex 6, p.1. Exhibit A lists the units by serial number. *Id*. at 6. Exhibit B shows overhead photographs of them. *Id.*

8

at 7-9. The Plaintiff conflates two distinct aspects of the deal: identification of the goods to be sold with identification of the goods for release. The former occurred in this case; the latter did not.

While parties to a sale contract enjoy considerable freedom in determining the moment that title passes to the buyer, they are limited by two "immutable rules." *Malloy v. Brazeal (In re Callahan)*, No. 07-10070-R, 2007 WL 3018946, at *4 (Bankr. N.D. Okla. Oct. 11, 2007). The first is that title to goods cannot pass until goods are "identified to the contract." *Id.* The second is that once the goods are in the possession of the buyer, any "reservation of an interest or title by the seller is deemed a security interest." *Id.* Again, "[i]n no event…may title remain in the seller after the buyer takes possession of the goods…regardless of the parties' agreement or intent." *Id.* at *5; *In re Rome Family Corp.*, 407 B.R. 65, 76-77 (Bankr. D. Vt. 2009); *see also O'Dell v. Kunkel's, Inc.*, 581 P.2d 878, 881 (Okla. 1978); *In re Pro Page Partners, LLC*, 270 B.R. 221, 229-31 (Bankr. E.D. Tenn. 2001).

The Virginia UCC has codified these two "immutable rules."[6] Accordingly, the Court will apply the second sentence of § 8.2-401(1) to paragraph 3c of Contract. The record shows the Debtor was already in possession of the modular units at the time of contracting. *See* Neff's Ex. 5. True, the Contract attempts to delay the passage of title to the Debtor. Notably, paragraph 3c, titled "Partial Release," provides that a payment of $23,709.11 earns the buyer the release of a single modular office unit. Neff's Ex. 6, p.1. After payment, the buyer may identify any block of modular units for release as configured in Exhibit B. *Id.* at 1, 7-9. Such

---

[6] The first sentence of § 8.2-401(1) requires the identification of the goods to occur prior to the passage of title. The second sentence limits the effect of retention or reservation of title by the seller to a security interest. *See* Va. Code § 8.2-401(1).

9

language seeks to control how title passes but contravenes the statute and is of no avail. "Specifically, § 2–401(1) negates any attempt to forestall passage of title beyond the moment of final delivery; contract language purporting to do so merely results in a security interest being retained." *J. Adrian Sons, Inc.*, 205 B.R. at 26; *see also In re Bosson*, 432 F.Supp. 1013, 1021 n. 24; *In re Gull Air*, Inc., 73 B.R. 820 (Bankr. D. Mass. 1987).   Therefore, UCC § 2–401(1) limits the effect of paragraph 3c to the creation of a security interest in the modular units.   It did not forestall the passage of title until the Debtor fully performed.

When UCC Section 2–401(1) governs, the court in *J. Adrian Sons* was "convinced that there is no logical construction of § 2–401(2) or § 2–401(3) that would permit disobedience to § 2–401(1).   Section 2–401(1) deals with agreements.   Sections 2–401(2) and (3) deal with certain fact patterns in the absence of such an agreement."   205 B.R. at 27.   At the hearing, the Plaintiff argued that a UCC Section 2–401(1) analysis was improper because the modular units were not identified before the Contract and delivery was not completed.   If correct, Section 2–401(1) cannot apply and Section 2–401(3)(a) should control.   Such argument misstates the facts. First, the Contract expressly identifies the modular units.   Second, § 8.2-401(3)(a) applies to contracts where the seller is to "deliver a tangible document of title."   Va. Code § 8.2-401(3)(a). Yet the Contract does not mention the delivery of documents of title and the merger clause excludes the admission of extrinsic evidence.[7]   Neff's Ex. 6, p.4.   Paragraph 3c merely states that the release of all modular offices within any specific block must be earned (via installment payments) and identified by the buyer "prior to assignment of title" by the seller.   Neff's Ex. 6,

---

[7] At the hearing, counsel for the Plaintiff was unsure if certificates of title to the modular units existed.

10

p.1.  Section 8.2–401(3)(a) is inapposite.[8]   In this case, the units were already delivered and title passed at the time and place of contracting.   Therefore, the Debtor owned the modular units at the time of filing, and the units are property of the Debtor's estate.   WVEDA and Panthera Training are entitled to summary judgment on this issue and the Plaintiff's motion for partial summary judgment is denied on this issue.

   III.   Resolution of Counts II and III

The Complaint asserts two requests for relief that are premised upon the Plaintiff's ownership of the modular units: detinue and unjust enrichment.   For the reasons already explained, ownership of the modular units lies with the Debtor, not the Plaintiff.

At best, the Plaintiff reserved a security interest in the modular units pursuant to paragraph 3c of the Contract and Va. Code § 8.2-401(1), but never perfected that security interest.   Therefore, upon the Debtor's bankruptcy filing, the Plaintiff did not have a secured claim.   Without title or a secured claim, the Plaintiff has no standing to proceed with the detinue claim.[9]   Therefore, WVEDA's and Panthera Training's motions for summary judgment are granted and Count II is dismissed.

While the Plaintiff's non-ownership of the modular units is also likely fatal to Count III, the unjust enrichment claim against Panthera Training, the Court need not reach that issue as the Court lacks jurisdiction to resolve it.   28 U.S.C. § 1334(b) provides that "[n]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings

---

[8] Moreover, even if Section 8.2-401(3) applied, no document of title was contemplated pursuant to the Contract. Thus, "if the goods are at the time of contracting already identified and no documents of title are to be delivered, title *passes at the time and place of contracting*." (emphasis added).

[9] The stay of 11 U.S.C. § 362(a) would need to be terminated to pursue such a claim, which is more properly brought in state court.

11

under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). 28 U.S.C. § 157(a) further provides that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district," and further that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11...." 28 U.S.C. § 157(b). The District Court for the Northern District of West Virginia has referred all of the types of proceedings listed in Section 157 to this Court. *See* Amended Standing Order of Reference dated April 2, 2013 of the United States District Court for the Northern District of West Virginia.

Count III is against a non-debtor, Panthera Training, for its use of the modular units. It does not arise under the Bankruptcy Code, and it does not arise in the Debtor's bankruptcy case. Moreover, the claim is not "related to" the Debtor's bankruptcy case. The Fourth Circuit, like the majority of the other circuits, has adopted the test articulated by the Third Circuit in *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984), for determining "related to" jurisdiction.[10] *See A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1002 n. 11 (4th Cir. 1986). *See also In re Brooks*, No. 17-70665, 2017 WL 6016297, at *3 (Bankr. W.D. Va. Dec. 4, 2017). "In short, 'the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.*'" *Valley Historic Ltd. P'ship v. Bank of New York,* 486 F.3d 831, 836 (4th Cir. 2007) (quoting *Pacor*, 743 F.2d at 994); *New Horizon of N.Y. LLC v. Jacobs,* 231 F.3d 143, 154

---

[10] Although the Supreme Court has overturned *Pacor* in part, *see Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995) (overruling *Pacor*'s holding that the prohibition against review of a remand order in 28 U.S.C. § 1447(d) is not applicable in a bankruptcy case), the Court has not disturbed *Pacor*'s "related to" jurisdictional test.

12

(4th Cir. 2000); *Walter v. Freeway Foods, Inc. (In re Freeway Foods),* 449 B.R. 860, 873 (Bankr. M.D. N.C. 2011).  If the proceeding in question is not "related to" the bankruptcy, then the bankruptcy court has no jurisdiction to hear the matter at all.  *See* 28 U.S.C. § 1334(b); *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 , 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (a court which lacks subject matter jurisdiction cannot hear the matter at all and must dismiss it); *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) ("[B]ankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor.").  The resolution of Count III will bring no money into the estate, nor will resolution of Count III cause the estate to pay out any money.  The resolution of Count III will simply have no effect upon the estate whatsoever.  Therefore, the Court lacks jurisdiction to resolve this remaining Count, and Count III is dismissed.

## **CONCLUSION**

For all of the above reasons, Panthera Training's and WVEDA's motions for summary judgment are granted and the Plaintiff's motion for partial summary judgment is denied.  This Adversary Proceeding will be dismissed by separate Order entered contemporaneously herewith.

ENTERED this 4th day of November, 2020.